JUDGE HELLERSTEIN UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**13 CV 8365**

Alexandra Boyle, Taylor MacKenzie,
and Sarah Abbey, individually, and on
behalf of all others similarly situated,

                            Plaintiff,

v.

KIND, LLC, a
Delaware corporation,

                            Defendant.

_____/

**CASE NO.:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED
NOV 22 2013
U.S.D.C. S.D.N.Y.
CASHIERS

## CLASS ACTION COMPLAINT

Plaintiffs, Alexandra Boyle, Taylor MacKenzie, and Sarah Abbey ("Plaintiffs"), pursuant to Fed.R.Civ.P. 23, by and through their undersigned attorneys, brings this action, on behalf of themselves and a Nationwide Class, New York Subclass, New Jersey Subclass, and California Subclass of all other similarly situated persons, against Defendant, KIND, LLC, a Delaware Corporation, (hereinafter "KIND, LLC" or "Defendant" or "KIND"), and, except for information based on their own personal knowledge, alleges on information and belief based on the investigation conducted by their counsel, and facts that are a matter of public record, as follows:

### NATURE OF THE ACTION

1.     Plaintiffs bring this action individually and on behalf of a proposed class and subclasses ("Class" or "Classes"), as more fully defined below, of similarly situated consumers, nationwide and in New York, seeking to redress the pervasive pattern of deceptive, false and otherwise improper advertising, sales and marketing practices that KIND, LLC has engaged in and continues to engage in with regard to its KIND bars. As more fully alleged herein,

1

Defendant touts to consumers on the label of each individual bar that, "A study by the Yale-Griffin Prevention Research Center indicates that eating two KIND bars a day helps prevent weight gain." Reference to the Yale-Griffin Prevention Research Center Study (hereinafter, "Study") on the label appears above the fold of the wrapper, in a more prominent location than the nutrition information, which appears underneath the fold of the wrapper. Defendant also makes a nearly identical representation regarding the study on its website. Further, Defendant advertises the Study on the packaging of its boxes of KIND bars, with the slogan, "Fill up without filling out!" However, these representations are false and misleading, and are intended to induce unsuspecting consumers, including Plaintiff and other members of the proposed Class and Subclasses, into purchasing, at a premium price, hundreds of millions of dollars worth of KIND bars per year, distributed, marketed, advertised and/or sold by KIND, LLC.

2.      As more fully alleged herein, the Study KIND relies on does not find that eating two KIND bars a day helps prevent weight gain.

3.      Although KIND bars contain anywhere from 170–210 calories per bar, they are marketed as being "healthy snacks," a moniker which is posted at the top of KIND's website.

4.      KIND's "brAND philosophy" is premised on its bars being both healthy and tasty. KIND's clear and transparent wrapper, as opposed to a more common foil wrapper, has been a key to the brand's success in that consumers can see exactly what they will be consuming. In a December 2011 interview published in the Wall Street Journal, KIND's founder Daniel Lubetzky stated that what makes KIND different from other health-snack purveyors is that they are "...authentic and transparent. It's not just the transparent wrapper. It's the process we use, the ingredients we use, the names of our products. We don't come up with hokey names. We tell you exactly what the products are that you get." Sarah E. Needleman, *Healthy Craving*

*Feeds 'KIND' Bars*, Wall St. J., Dec. 15, 2011, *available at:*
http://online.wsj.com/news/articles/SB10001424052970204026804577098314019486238.
KIND's purported authenticity and transparency is belied by its brandishing a Study on both its
packaging and website that is false, deceptive, and misleading to consumers.

5.    Defendant knows or should know that its representations on both its product
packaging and website regarding the Study would lead reasonable consumers to rely upon these
representations that eating two KIND bars a day helps prevent weight gain, when, in fact, it does
not. Reasonable consumers of KIND bars, who are likely more health-conscious than the
average consumer, are particularly likely to rely on KIND's representations regarding the Study
and its purported benefits to help prevent weight gain.

## JURISDICTION, PARTIES AND VENUE

6.    Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and
the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1711, *et. seq.* The Plaintiff and the
Defendant in this action are citizens of different states and the amount in controversy in this
action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

7.    For the subclasses, the Court has original jurisdiction under CAFA and/or
supplemental jurisdiction under 28 U.S.C. § 1367.

8.    Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because
the Defendant is a Delaware corporation with its principal place of business in the Southern
District of New York; a substantial part of the events giving rise to these claims occurred in the
Southern District of New York; Defendant and/or its agents are doing business in New York;
and/or Defendant is otherwise subject to personal jurisdiction in this judicial district.

9.    This Court has personal jurisdiction over the Defendant pursuant to New York

3

CPLR §301 because the Defendant's principal place of business is in New York. Alternatively, the Court has personal jurisdiction under §302(a)(1) because the Defendant transacts business within the state and/or contracts to supply goods or services in the state. Personal jurisdiction is also appropriate pursuant to New York CPLR §302 (a)(2) because Defendant committed tortious acts within the State of New York.

## PLAINTIFFS

10.    For purposes of clarity, the Plaintiffs are asserting claims on behalf of all consumers of KIND bars who do not appear herein as named Plaintiffs.

11.    Plaintiff Alexandra Boyle is a resident of Manhattan, New York County, New York. Ms. Boyle has purchased and ingested many of Defendant's KIND bars over the course of several years in New York.

12.    Plaintiff Taylor MacKenzie is a resident of Hoboken, Hudson County, New Jersey. Ms. MacKenzie has purchased and ingested approximately one of Defendant's KIND bars per day for the last two years. She purchased Defendant's KIND bars in New Jersey.

13.    Plaintiff Sarah Abbey is a resident of San Francisco, San Francisco County, California. Ms. Abbey has purchased and ingested approximately two KIND bars per week for the last two years. She purchased Defendant's KIND bars in California.

## DEFENDANT

14.    Defendant KIND, LLC is a Delaware corporation with its principal place of business in New York, NY, and is responsible for distribution, sales and marketing of KIND bars in the United States.

## GENERAL ALLEGATIONS REGARDING KIND BARS

15.     In 2004, Daniel Lubetzky started KIND, to provide healthy snack options for people on the go.  He wanted to grow a business that "looked to better the world in some way" and created KIND to "offer a healthier snack bar and promote generosity of spirit."  Catherine New, *KIND Nut Bars CEO Attributes Success to Clear Wrapper*, Mar. 18, 2013, HUFF. POST., *available at*: http://www.huffingtonpost.com/2013/03/18/kind-nut-bars_n_2876506.html.

16.     KIND differentiated itself with its clear wrapper, which transparently displayed the bar's whole nuts and other ingredients.

17.     In 2008, in an attempt to get Starbucks to carry KIND bars, Mr. Lubetzky sent an e-mail to an executive at Starbucks referencing a Yale pilot study indicating that eating two KIND bars a day can help people lose weight.  Kelly K. Sport, *A Small Player Breaks Into Starbucks*, June 30, 2009, N.Y. TIMES, *available at:* http://www.nytimes.com/2009/07/01/business/smallbusiness/01snackbar.html?pagewanted=all&_r=1&.  Shortly thereafter, Starbucks began selling KIND bars, and since 2009, KIND bars have been offered in nearly all of the coffee chain's 7,000 locations. New, HUFF. POST, *supra*.

18.     In a similar marketing effort, the company sent out 2,000 New Year's greeting cards with KIND bars, stating, "eat 2 KIND bars a day, and lose weight."  *See,* http://blog.peaceworks.net/2009/01/yale-study-eating-kind-bars-helps-lose-weight/.

19.     Today, KIND sells more than 20 million bars a month, at 80,000 locations nationwide, 2,000 of them in New York City.  Emily S. Rueb, *Doing the Math on Snack*, Aug. 9, 2013, N.Y. TIMES, *available at*: http://www.nytimes.com/2013/08/11/nyregion/doing-the-math-on-a-snack.html.  The suggested retail price of a bar is $1.99, but the actual price can vary from as little as $1.00 per bar to $3.50 per bar.  *Id.*  Last year, consumption of the bars rose more than

100 percent. *Id.*

20.     KIND has premised its entire brand identity and advertising campaign on health. KIND advertises it's brAND philosophy on its website, which is, "There's healthy.  There's tasty.  Then there's healthy and tasty.  At KIND, we believe you deserve both."  KIND also implores consumers on both its product labels and website to: "do the kind thing for your body, your tastebuds, & the world."

21.     In 2008, KIND's former affiliate, PeaceWorks Holdings LLC, financed a Study with the Yale-Griffin Prevention Research Center to determine whether eating two KIND bars a day helped consumers lose weight.

22.     The Study consisted of two groups of overweight adults: a control group and an experimental group.  All of the 94 participants in the Study were overweight adults.  Members of control group were advised to follow their usual daily diets for eight weeks, while members of the experimental group were instructed to add two KIND Fruit & Nut bars to their usual diets for the duration of eight weeks.  Members of the experimental group were not given any particular guidance on how to make room for the additional calories.  After eight weeks, the Study found that members of both groups successfully maintained their weight, body mass index (BMI), and waist size, despite the fact that the experimental group had purportedly added 340 calories to their daily diets.

23.     Based upon the results of the Study, KIND represents on its products' labels, boxes, and website that eating two KIND bars a day helps prevent weight gain.

24.     However, the Study was fraught with problems, and its results do not represent that eating two KIND bars a day helps prevent weight gain.

25.     First, the Study only includes a decidedly small sample size of 94 people, of

whom only 89 completed the Study.

26.    Second, there was no proof in the Study that the experimental group actually added an additional 340 calories to its diet per day.  The total daily calorie consumption of each participant was not measured or monitored.  Rather, the experimental group participants were only required to prove that they ate two KIND bars per day by submitting the wrappers.

27.    Third, the participants in the study only consumed KIND Fruit & Nut bars, despite there being two other types of KIND bars currently on the market: KIND PLUS and KIND Nuts & Spices.  However, KIND still represents that according to the STUDY, eating two KIND bars a day may help prevent weight gain without reference to what type of KIND bars.

28.    There are an abundance of variables possible for why the Study's participants did not gain weight at the end of the eight week period.  Perhaps these already overweight individuals decided to exercise more during the study.  Exercise was not factored into the study.  Perhaps the participants became more aware of what they were consuming as a result of the Study, and chose to either eat less or eat healthier.  Perhaps the experimental group participants substituted two KIND bars a day for 340 calories worth of other food.  None of these basic and obvious variables were considered in this self-serving Study.

29.    The Study principally dealt with satiety after snacking on purportedly nutrient dense foods.  The idea is that if people fill up on foods rich in healthy ingredients like nuts and fruit, they will not eat other less healthy alternatives.  The study concludes that "the role of habitual snacking on nutrient dense and satiating foods on both weight over time, and diet quality, *warrants further study*." (emphasis added).

30.    The conditions and results of this Study are not sufficient for KIND to represent to consumers that eating two KIND bars a day may help prevent weight gain.  Doing so is

deliberately misleading, deceptive, and false.

31.     A small but significant disparity exists in KIND's representation of the Study on its website versus its representation on KIND bar labels and boxes.  The website states, "Need another reason to choose KIND? A recent study conducted by the Yale-Griffin Prevention Research Center found that two KIND bars a day *can curb appetite and even* help prevent weight gain." (emphasis added) *See*, http://www.kindsnacks.com/store#All-Bars.  In contrast, the KIND bar labels merely state, "A recent study conducted by the Yale-Griffin Prevention Research Center found that two KIND bars a day may help prevent weight gain."

32.     The representation regarding the Study on the KIND website is different than the representation on the KIND bar labels and boxes because it gives some context to why eating two KIND bars can help prevent weight gain: because it can curb appetite.   Conversely, the labels and boxes represent to consumers merely that "eating two KIND bars a day helps prevent weight gain."

33.     From these representations made by KIND on its labels, boxes, and website, reasonable consumers could believe that eating two KIND bars a day will help to prevent them from gaining weight.

34.     Reasonable consumers, such as Plaintiffs and Class Members, rely on these misrepresentations and deceptive references to the Study in deciding to purchase and consume KIND bars.

35.     Reasonable consumers of KIND bars, such as Plaintiffs and Class Members, particularly rely on these misrepresentations and deceptive references to the Study because they are more health-conscious and cognizant of nutritional representations than average consumers. This is true because KIND's entire brand, image, and advertising platform is premised on health,

and catering to health-conscious consumers. KIND bars are principally sold in grocery stores and other establishments that promote similar healthy values such as Whole Foods and General Nutrition Centers (GNC).

36.    While KIND bars may indeed be a "healthy" snack, the company is over-reaching in representing to its consumers that eating two KIND bars per day may help prevent weight gain as an inducement to purchase KIND bars.

37.    Further, reference to the Study on the label appears above the fold of the wrapper, in a more prominent location than the nutrition information, which appears underneath the fold of the wrapper. KIND knows, or should know that reasonable consumers wishing to examine the nutrition information would first see the reference to the Study and representation that eating two KIND bars a day may help prevent weight gain.

38.    Plaintiffs were lured into becoming a consumer of KIND bars through its branding and marketing message as a healthy snack, including KIND's nutritional labeling and reference to the Study. Plaintiffs have regularly purchased and consumed KIND bars because of Defendant's marketing, including reference to the Study on KIND's labels, boxes, and website, that eating two KIND bars a day may help prevent weight gain. However, this representation which is persistently and pervasively marketed by KIND is misleading, deceptive, and false.

39.    As a result of the foregoing, Defendant's advertising and representations regarding KIND bars is deceptive and misleading. Because of Defendant's deceptive and misleading tactics, Plaintiffs and other members of the proposed Class and Subclasses were and have been induced to purchase and continue to purchase KIND bars. However, Plaintiffs and other members of the proposed Class and Subclasses would not have made these purchasing decisions had they been aware of the truth about Defendant's KIND bars.

40.     Defendant was in a superior position to know and did know that its claims and advertisements were misleading, deceptive and false and they failed to inform consumers that despite the purported conclusion of the Study, eating two KIND bars per day does not help prevent weight gain.

41.     Instead, Defendant allows/allowed its deceptive, false, and misleading marketing to permeate the consumer advertising consciousness and perpetuate Defendant's false claims and promises.

42.     Because of such deceptive practices and conduct, Defendant has been able to sell more of its product than it otherwise would have and achieve substantial market share and sales in the United States. Thus, Defendant reaps profits on products where reasonable consumers have been induced to buy them because of a perceived superior nature.

43.     All conditions precedent necessary for the filing of this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of a Nationwide Class, New York Subclass, New Jersey Subclass, and California Subclass of other similarly situated persons pursuant to Fed.R.Civ.P.23(a), 23(b)(2), and/or 23(b)(3).  Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed.  The proposed Classes are defined as follows:

> **Nationwide Class**: All persons who purchased Defendant's KIND bars within the applicable statutory limitations period, including the period following the filing date of this action.
> **New York Subclass**: All residents of the State of New York who

purchased Defendant's KIND bars within the applicable statutory limitations period, including the period following the filing date of this action.

**New Jersey Subclass:** All residents of the State of New Jersey who purchased Defendant's KIND bars within the applicable statutory limitations period, including the period following the filing date of this action.

**California Subclass:** All residents of the State of California who purchased Defendant's KIND bars within the applicable statutory limitations period, including the period following the filing date of this action.

45.    Excluded from the Classes are: (1) Defendant, Defendant's subsidiaries, affiliates, officers, directors, assigns and successors, and any entity which Defendant has a controlling interest; (2) the Judge to whom this case is assigned and any member of the judge's immediate family; and (3) anyone who purchased the KIND bars solely for the purpose of resale. Plaintiff reserves the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

46.    This action has been brought and may properly be maintained as a class action pursuant to Fed.R.Civ.P. 23 and case law thereunder.

47.    **Numerosity:** The members of the Classes are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that the Classes are comprised of hundreds of thousands, if not millions, of consumers throughout the United States and New York.

48.    **Commonality:** Common questions of law and fact exist as to all members of the Classes. These common questions predominate over any questions affecting only individual

Class members. These common legal and factual questions include, but are not limited to, the following:

- whether Defendant's claims that according to the Study, eating two KIND bars a day can help prevent weight loss are deceptive or misleading;

- whether Defendant engaged in false or misleading advertising;

- whether Defendant's conduct as alleged herein violates the New York Deceptive Acts and Practices Act, New Jersey Consumer Fraud Act, California Unfair Competition Law and False Advertising Law, and/or other States' unfair trade practices acts;

- whether Defendant's conduct as alleged herein constitutes a breach of warranty;

- whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and

- whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

These and other questions of law or fact which are common to the members of the Classes and predominate over any questions affecting only individual members of the Class.

49. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Classes, as all Class members are similarly affected by Defendant's wrongful conduct. Plaintiffs, like other members of the Classes, purchased KIND bars after exposure to the same material misrepresentations and/or omissions appearing on the product labels, boxes, and website, and received a product that was not as represented. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Classes.

50. **Adequacy:** Plaintiffs' claims are made in a representative capacity on behalf of the other members of the Class. Plaintiffs have no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

51. Plaintiffs are similarly situated in interest to all members of the proposed Class and are committed to the vigorous prosecution of this action and have retained competent

counsel experienced in the prosecution of class actions.  Accordingly, Plaintiffs are adequate representatives of the proposed Class and will fairly and adequately protect the interests of the Class.

52.    This suit may be maintained as a class action under Fed.R.Civ.P. 23(b)(2) because Defendant has acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  Specifically, injunctive relief is necessary and appropriate to require Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing that eating two KIND bars a day helps prevent weight gain; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to their prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning KIND bars' effect on consumers' weight including without limitation, the placement of corrective advertising and providing written notice to the public.

53.    In addition, this suit may be maintained as a class action under Fed.R.Civ.P. 23 (b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes could afford such litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents no management difficulties, and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
### Breach of Express Warranty
**(Asserted on Behalf of the Nationwide Class and the New York, California, and New Jersey Subclasses)**

54.    Plaintiffs Alexandra Boyle, Taylor MacKenzie, and Sarah Abbey re-allege and incorporate by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

55.    Plaintiffs and Class Members were aware of and/or understood the claims made on KIND bars' label, boxes, and/or website, as set forth herein, and/or Defendant's marketing and advertising claims prior to purchasing the product.

56.    Plaintiffs, and each member of the Classes, formed a contract with Defendant at the time they purchased Defendant's KIND bars.  The terms of that contract include the promises and affirmations of fact made by Defendant on the labels, boxes, and website of KIND bars. KIND bars' labeling and advertising constitute express warranties, are part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Classes, on the one hand, and Defendant, on the other.

57.    Alternatively, privity was established between Defendant and Plaintiffs and Class Members because Defendant, and/or its agents, were substantially, if not completely responsible for directly promoting and marketing Defendant's KIND bars to Plaintiffs and Class Members and Plaintiffs and Class Members were directly promoted to and marketed to by Defendant prior to purchasing KIND bars, resulting in the purchase of Defendant's KIND bars by Plaintiff and Class Members.  By virtue of this direct promotion and marketing to Plaintiffs and Class Members, Defendant directly made an express warranty of the KIND bars' attributes and

benefits to Plaintiffs and Class Members.

58.    All conditions precedent to Defendant's liability under the warranty claim have been performed by Plaintiffs and the Classes.

59.    Defendant breached the terms of the express warranty by not providing a product that provided or conformed to the benefits promised.  The statements made by Defendant that according to the Study, eating two KIND bars a day helps prevent weight gain were statements and affirmations based on specific benefits over alternative "healthy" snack bars.

60.    Plaintiffs and Class Members relied on these representations by Defendant in purchasing KIND bars in the first place and/or instead of other alternatives.

61.    As a result of Defendant's breach of warranty, Plaintiffs and Class Members have been damaged in the amount of the purchase price of Defendant's KIND bars they purchased, and have suffered other damages to be determined by proof at trial.

## COUNT II
### Violation of N.Y. Gen. Bus. Law. §349- Deceptive Acts and Practices
### (Asserted on Behalf of the New York Subclass)

62.    Plaintiff Alexandra Boyle re-alleges and incorporates by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

63.    N.Y. Gen. Bus. Law §349 states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful."

64.    Through its deceptive acts and practices (including omissions), Defendant has harmed the public at large, including Plaintiff and members of the New York Subclass, and such deceptive acts and practices were conducted through trade or commerce.

65.    Defendant's deceptive acts and practices, as alleged herein, are and were consumer

oriented in that the Defendant is in the business of distributing, marketing and selling its KIND bars to consumers, including Plaintiff and members of the New York Subclass.

66.    The Defendant's deceptive acts and practices (or omissions) as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Subclass regarding Defendant's products.

67.    As alleged herein, Defendant engaged in deceptive or materially misleading acts or practices by, but not limited representing on its KIND bar labels, boxes, and website that the Study indicates that eating two KIND bars a day helps prevent weight gain, when in fact, it does not.

68.    The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including but not limited to, the knowing misrepresentation or failure to disclose the true nature of the characteristics, ingredients, standards and quality of KIND bars also constitute violations of the provisions of the New York Deceptive Acts and Practices Act.

69.    The Defendant's false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiff and members of the Class and Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment, including paying a premium price for KIND bars, a "healthy snack," as opposed to alternative and less expensive snack bars or other snacks.

70.    Plaintiff and New York Subclass members have suffered actual damages as a result of Defendant's violations of GBL § 349 and are entitled to relief including, but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law.

## COUNT III
### Violation of N.Y. Gen. Bus. Law. §350- False Advertising
### (Asserted on Behalf of the New York Subclass)

71.    Alexandra Boyle re-alleges and incorporates by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

72.    N.Y. Gen. Bus. Law §350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

73.    Through its deceptive acts and practices (including omissions), Defendant has harmed the public at large, including Plaintiff and members of the New York Subclass, and such deceptive acts and practices were conducted through trade or commerce.

74.    Defendant's deceptive acts and practices, as alleged herein, are and were consumer oriented in that the Defendant is in the business of distributing, marketing and selling its KIND bars to consumers, including Plaintiff and members of the New York Subclass.

75.    The Defendant's deceptive acts and practices (or omissions) as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiffs and members of the Subclass regarding Defendant's products.

76.    As alleged herein, Defendant engaged in false advertising by, but not to limited to representing on its KIND bar labels, boxes, and website that the Study indicates that eating two KIND bars a day helps prevent weight gain, when in fact, it does not.

77.    The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including but not limited to, the knowing misrepresentation or failure to disclose the true nature of the characteristics, ingredients,

standards and quality of KIND bars also constitute violations of GBL § 350.

78.    Plaintiff and Subclass members relied on these false representations made by KIND in purchasing KIND bars at a premium price over alternative and less expensive snack bars or other snacks.

79.    Plaintiff was health-conscious, concerned with maintaining a healthy diet, and preventing weight gain. Accordingly, Plaintiff ate the purportedly healthy KIND bars over other alternative snacks or snack bars.

80.    The Defendant's false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiff and members of the Class and Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

81.    Plaintiff and New York Subclass members have suffered actual damages as a result of Defendant's violation of GBL § 350 and are entitled to relief including, but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law.

## COUNT IV
### Violation of Other Consumer Protection Acts
### (Asserted on Behalf of the Plaintiff and the New Jersey Subclass)

82.    Plaintiff Taylor MacKenzie re-alleges and incorporates by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

83.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-1 *et. seq.* is designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. By making false and deceptive claims that the Study indicates that eating two KIND bars a day helps prevent weight gain, Defendant has engaged, and continues to engage, in unfair competition or

unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of N.J.S.A. §56:8-1 *et. seq*.

84.      The acts, practices, misrepresentations and omissions by Defendant, as described above, and Defendant's dissemination of deceptive and misleading labeling, advertising, marketing, and sales materials concerning its products, constitutes unfair competition and unfair or deceptive acts or practices within the meaning of N.J.S.A. §56:8-1 *et. seq*.

85.      Defendant violated N.J.S.A. §56:8-1 *et. seq*. by making certain false, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars.

86.      The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the New Jersey Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

87.      Plaintiff and the other New Jersey Subclass members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiff and the other New Jersey Subclass members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website, and (b) Plaintiffs were induced to pay a premium price for KIND bars, a "healthy snack," as opposed to alternative and less expensive snack bars or other snacks.

88.      Plaintiff and New Jersey Subclass members suffered an ascertainable loss as a result of Defendant's unfair, deceptive, and/or unconscionable acts and practices.  Specifically, Plaintiff ate approximately one KIND bar per day for approximately two years, at a cost of

approximately $1.70 per bar.  By this calculation, Plaintiff's ascertainable loss was $1241.00.

89.    As a result of Defendant's violations of the foregoing state consumer protection statutes, Plaintiff and the other New Jersey Subclass members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiff and New Jersey Subclass members may be entitled.

**COUNT V**
**Violation of California Unfair Competition Law**
**(Asserted on Behalf of the Plaintiff and the California Subclass)**

90.    Plaintiff Sarah Abbey re-alleges and incorporates by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

91.    The California Unfair Competition Law (UCL), Cal. Bus. & Prof Code § 17200, *et seq.* is designed to protect consumers against deceptive, unfair, unlawful, and fraudulent trade and business practices. By making false and deceptive claims that the Study indicates that eating two KIND bars a day helps prevent weight gain, Defendant has engaged, and continues to engage, in unfair competition or unlawful, unfair, misleading, unconscionable, fraudulent, or deceptive acts in violation of the UCL.

92.    The acts, practices, misrepresentations and omissions by Defendant, as described above, and Defendant's dissemination of deceptive and misleading labeling, advertising, marketing, and sales materials concerning its products, constitutes unfair competition and unfair or deceptive acts or practices within the meaning of the UCL.

20

93.    Defendant violated the UCL by making certain false, fraudulent, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars.

94.    The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the California Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

95.    Plaintiff and the other California Subclass members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiff and the other California Subclass members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website, and (b) Plaintiffs and other California Subclass members were induced to pay a premium price for KIND bars, a "healthy snack," as opposed to alternative and less expensive snack bars or other snacks.

96.    Plaintiff and members of the California Subclass relied on Defendant's unconscionable, unfair, fraudulent, and deceptive acts and practices set forth in this complaint, including references to the Study and KIND bars' effect on helping to prevent weight gain.

97.    Plaintiff was health-conscious, concerned with maintaining a healthy diet, and preventing weight gain. Accordingly, Plaintiff ate the purportedly healthy KIND bars over other alternative snacks or snack bars.

98.    As a result of Defendant's violations of the foregoing state consumer protection statutes, Plaintiff and the other California Subclass members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages,

punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiff and California Subclass members may be entitled.

## COUNT VI
### Violation of California False Advertising Law
### (Asserted on Behalf of the Plaintiff and the California Subclass)

99.    Plaintiff Sarah Abbey re-alleges and incorporates by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

100.    The False Advertising Law (FAL), Cal. Bus. & Prof Code § 17500, *et seq.* is designed to protect consumers against deceptive, unfair, unlawful, and false advertising.  By making false and deceptive claims that the Study indicates that eating two KIND bars a day helps prevent weight gain, Defendant has engaged, and continues to engage false advertising in violation of the FAL.

101.    Defendant violated the FAL by making certain false, fraudulent, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars, including, but not limited to representations on its KIND bar labels, boxes, and website that according to the Study, eating two KIND bars a day helps prevent weight gain. Defendant knew or should have known that these representations were false, deceptive, and misleading.

102.    The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the California Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

103.    Plaintiff and the other California Subclass members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices,

because: (a) Plaintiff and the other California Subclass members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website, and (b) Plaintiffs and other California Subclass members were induced to pay a premium price for KIND bars, a "healthy snack," as opposed to alternative and less expensive snack bars or other snacks.

104.    Plaintiff and members of the California Subclass relied on Defendant's unconscionable, unfair, fraudulent, and deceptive acts and practices set forth in this complaint, including references to the Study and KIND bars' effect on helping to prevent weight gain.

105.    Plaintiff was health-conscious, concerned with maintaining a healthy diet, and preventing weight gain.  Accordingly, Plaintiff ate the purportedly healthy KIND bars over other alternative snacks or snack bars.

106.    As a result of Defendant's violations of the foregoing state consumer protection statutes, Plaintiff and the other California Subclass members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiff and California Subclass members may be entitled.

## COUNT VII
### Violation of States' Consumer Protection Laws
### (Asserted on Behalf of the Plaintiff and the National Class)

107.    Plaintiffs Alexandra Boyle, Taylor MacKenzie, and Sarah Abbey re-allege and incorporate by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

108.    The vast majority of states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. By making false and deceptive claims that the Study indicates that eating two KIND bars a day may prevent weight gain, Defendant has engaged, and continues to engage, in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed, but not limited to the below:

a.    Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.;*

b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*

c.    Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq.;*

f.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.;*

g.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42- 110a, *et seq.;*

h.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

i.    District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.;*

j.    Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et seq.*;

k.    Georgia Fair Business Practices Act, §10-1-390 *et seq.;*

l.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.;*

m.    Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

n.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

o.    Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

p.      Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

q.      Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.;*

r.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

s.      Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

t.      Michigan Consumer Protection Act, §§ 445.901, *et seq.;*

u.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

v.      Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

w.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

x.      Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

y.      Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.;*

z.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

aa.     New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:l, *etseq.;*

bb.     New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

cc.     North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

dd.     Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109:4-3-02, 109:4-3-03, and 109:4-3-10;

ee.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

ff.    Oregon Unfair Trade Practices Act, Ore. Rev. Stat § 646.608(e) &(g);

gg.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

hh.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

ii.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

jj.    Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.;*

kk.    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

ll.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.;*

mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

nn.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

("Consumer Protection Acts").

The acts, practices, misrepresentations and omissions by Defendant, as described above, and Defendant's dissemination of deceptive and misleading labeling, advertising, marketing, and sales materials concerning its products, constitutes unfair competition and unfair or deceptive acts or practices within the meaning of each of the above enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions.

109.    Defendant violated each of these statutes by making certain false, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars.

110.    The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiffs and members of the

Class acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

111.    Plaintiffs and the other Class Members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiffs and the other Class Members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website.

112.    As a result of Defendant's violations of the foregoing state consumer protection statutes, Plaintiffs and the other Class Members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiffs and the Class Members may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Classes defined herein, prays for judgment as follows:

a.  Certification of the Classes under Federal Rule of Civil Procedure 23 and appointment of Plaintiffs Alexandra Boyle, Taylor MacKenzie, and Sarah Abbey as class representatives of the National Class, Alexandra Boyle as representative of the New York Subclass, Taylor MacKenzie as representative of the New Jersey Subclass, and Sarah Abbey as representative of the California Subclass, and their counsel as Class counsel;

b.  A temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing that a Study indicates that eating two KIND bars a day may help prevent

weight gain; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to the prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of KIND bars, including without limitation, the placement of corrective advertising and providing written notice to the public;

c.  An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiffs and all members of the Classes and to restore to the Plaintiffs and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false advertising;

d.  Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

e.  Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

f.  Statutory pre-judgment and post-judgment interest on any amounts;

g.  Reasonable attorneys' fees as may be allowable under applicable law;

h.  Costs of this suit; and

i.  Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  November 21, 2013

Respectfully Submitted,

MORELLI ALTERS RATNER (NEW YORK)
950 Third Avenue
11th Floor
New York, New York  10022
Telephone:    (212) 751-9800
Facsimile    (212) 751-0046

By: _____
Benedict P. Morelli
bmorelli@morellialters.com
S.D.N.Y. Bar ID: BP6597
David S. Ratner
dratner@morellialters.com
S.D.N.Y Bar ID: DR7758
Adam Deutsch
adeutsch@morellialters.com
S.D.N.Y. Bar ID: AD8836
David Sirotkin
dsirotkin@morellialters.com
S.D.N.Y. Bar ID: DS4863

MORELLI ALTERS RATNER (MIAMI)
Miami Design District
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone:    (305) 571-8550
Facsimile:    (305) 571-8558

Jeremy W. Alters
jalters@morellialters.com
Florida Bar No.: 111790
Matthew T. Moore
mmoore@morellialters.com
Florida Bar No.: 70034