## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Alexandra Boyle, Taylor MacKenzie,
and Sarah Abbey, individually, and on
behalf of all others similarly situated,

                     Plaintiff,

v.

KIND, LLC, a
Delaware corporation,

                  Defendant.
_____/

**CASE NO.: 13-cv-8365 (AKH)**

**FIRST AMENDED
CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Alexandra Boyle, Taylor MacKenzie, and Sarah Abbey ("Plaintiffs"), pursuant to Fed.R.Civ.P. 23, by and through their undersigned attorneys, brings this action, on behalf of themselves and a Nationwide Class, New York Subclass, New Jersey Subclass, and California Subclass of all other similarly situated persons, against Defendant, KIND, LLC, a Delaware Corporation, (hereinafter "KIND, LLC" or "Defendant" or "KIND"), and, except for information based on their own personal knowledge, alleges on information and belief based on the investigation conducted by their counsel, and facts that are a matter of public record, as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action individually and on behalf of a proposed class and subclasses ("Class" or "Classes"), as more fully defined below, of similarly situated consumers, nationwide and in New York, New Jersey, and California, seeking to redress the pervasive pattern of deceptive, false, misleading, and otherwise improper advertising, sales, and marketing practices that KIND, LLC has engaged in and continues to engage in with regard to its KIND bars. As more

fully alleged herein, Defendant touts to consumers on the label of each individual bar that: "A study by the Yale-Griffin Prevention Research Center indicates that eating two KIND bars a day helps prevent weight gain."  Reference to the Yale-Griffin Prevention Research Center Study (hereinafter, "Yale-Griffin Study," or "Study") on the label appears on the back of the wrapper, in a more prominent location than the nutrition information, which appears underneath the fold of the wrapper.  Indeed, in order to view the nutrition information on a KIND bar, one must first fold up the flap of the wrapper upon which the statement about the Study is placed.  Defendant also makes a nearly identical representation regarding the Study on its website.  Further, Defendant advertises the Study on the packaging of its boxes of KIND bars, with the slogan: "Fill up without filling out!"  However, these representations are false and misleading, and are intended to induce unsuspecting consumers, including Plaintiffs and other members of the proposed Class and Subclasses, into purchasing, at a premium price, hundreds of millions of dollars' worth of KIND bars per year, distributed, marketed, advertised, and/or sold by KIND, LLC.

2.      As more fully alleged herein, the Study KIND relies on does not find that eating two KIND bars a day helps prevent weight gain.

3.      The inclusion of the Study on the label has the capacity, likelihood, and tendency to deceive or confuse the public, including Plaintiffs and Class Members, into believing that simply consuming two KIND bars a day will prevent weight gain — which it will not.

4.      Moreover, although KIND bars contain anywhere from 170–210 calories per bar, they are marketed as being "healthy snacks," a moniker which is posted at the top of KIND's website.

5.      KIND's "brAND philosophy" is premised on its bars being both healthy and tasty. KIND's clear and transparent wrapper, as opposed to a more common foil wrapper, has been a key

to the brand's success in that consumers can see what they will be consuming.  In a December 2011 interview published in the Wall Street Journal, KIND's founder Daniel Lubetzky stated that what makes KIND different from other health-snack purveyors is that they are "…authentic and transparent.  It's not just the transparent wrapper.  It's the process we use, the ingredients we use, the names of our products.  We don't come up with hokey names.  We tell you exactly what the products are that you get."  Sarah E. Needleman, *Healthy Craving Feeds 'KIND' Bars*, Wall St. J., Dec. 15, 2011, *available at:*

http://online.wsj.com/news/articles/SB10001424052970204026804577098314019486238.

KIND's purported authenticity and transparency is belied by its brandishing a representation about a Study on both its packaging and website that is false, deceptive, and misleading to consumers.

6.     Defendant knows or should know that its misrepresentations on both its product packaging and its website pertaining to the Yale-Griffin Study and about how its bars are "healthy snacks" that allow consumers to "Fill up without filling out!" would lead reasonable consumers to rely upon these misrepresentations and purchase KIND bars for their purported benefit of helping to prevent weight gain, when in fact its bars do not help prevent weight gain. Reasonable consumers of KIND bars, who are likely more health-conscious than the average consumer, are particularly likely to rely on KIND's misrepresentation regarding the Study and its bars' purported benefit of helping to prevent weight gain.  Moreover, reasonable consumers of KIND bars are likely to see and rely on KIND's representation about the Study because, given the design of the KIND bars' packaging, consumers must lift a flap on the back of the bars in order to view the bars' nutrition information.  It is on this flap that KIND makes its material misrepresentation about the Yale-Griffin Study.

## JURISDICTION, PARTIES AND VENUE

7.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1711, *et. seq.*  The Plaintiff and the Defendant in this action are citizens of different states and the amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

8.      For the subclasses, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

9.      Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because the Defendant is a Delaware corporation with its principal place of business in the Southern District of New York; a substantial part of the events giving rise to these claims occurred in the Southern District of New York; Defendant and/or its agents are doing business in New York; and/or Defendant is otherwise subject to personal jurisdiction in this judicial district.

10.      This Court has personal jurisdiction over the Defendant pursuant to New York CPLR §301 because the Defendant's principal place of business is in New York.  Alternatively, the Court has personal jurisdiction under §302(a)(1) because the Defendant transacts business within the state and/or contracts to supply goods or services in the state.  Personal jurisdiction is also appropriate pursuant to New York CPLR §302 (a)(2) because Defendant committed tortious acts within the State of New York.

## PLAINTIFFS

11.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all consumers of KIND bars who do not appear herein as named Plaintiffs.

12.      Plaintiff Alexandra Boyle is a resident of Manhattan, New York County, New York.  Ms. Boyle has purchased and ingested many of Defendant's KIND bars over the course of

several years in New York.

13.    Plaintiff Taylor MacKenzie is a resident of Hoboken, Hudson County, New Jersey. Ms. MacKenzie has purchased and ingested approximately one of Defendant's KIND bars per day for the last two years.  She purchased Defendant's KIND bars in New Jersey.

14.    Plaintiff Sarah Abbey is a resident of San Francisco, San Francisco County, California.  Ms. Abbey has purchased and ingested approximately two KIND bars per week for the last two years.  She purchased Defendant's KIND bars in California.

## DEFENDANT

15.    Defendant KIND, LLC is a Delaware corporation with its principal place of business in New York, NY, and is responsible for distribution, sales, and marketing of KIND bars in the United States.

## GENERAL ALLEGATIONS REGARDING KIND BARS

16.    In 2004, Daniel Lubetzky started KIND, to provide snack options for people on the go.  He wanted to grow a business that "looked to better the world in some way" and created KIND to "offer a healthier snack bar and promote generosity of spirit."  Catherine New, *KIND Nut Bars CEO Attributes Success to Clear Wrapper*, Mar. 18, 2013, HUFF. POST., *available at*: http://www.huffingtonpost.com/2013/03/18/kind-nut-bars_n_2876506.html.

17.    KIND differentiated itself with its clear wrapper, which transparently displayed the bars' whole nuts and other ingredients.

18.    In 2008, in an attempt to get Starbucks to carry KIND bars, Mr. Lubetzky sent an e-mail to an executive at Starbucks referencing a Yale pilot study indicating that eating two KIND bars a day can help people lose weight.  Kelly K. Sport, *A Small Player Breaks Into Starbucks*, June 30, 2009, N.Y. TIMES, *available at*:

http://www.nytimes.com/2009/07/01/business/smallbusiness/01snackbar.html?pagewanted=all&_r=1&.  Shortly thereafter, Starbucks began selling KIND bars, and for several years starting in 2009, KIND bars were offered in nearly all of the coffee chain's approximately 7,000 stores in the United States.  New, HUFF. POST, *supra*.

19.    In a similar marketing effort, KIND sent out 2,000 New Year's greeting cards with KIND bars, stating, "eat 2 KIND bars a day, and lose weight."    *See,* http://blog.peaceworks.net/2009/01/yale-study-eating-kind-bars-helps-lose-weight/.

20.    Today, KIND sells more than 20 million bars a month, at 80,000 locations nationwide, 2,000 of them in New York City.  Emily S. Rueb, *Doing the Math on Snack*, Aug. 9, 2013, N.Y. TIMES, *available at*: http://www.nytimes.com/2013/08/11/nyregion/doing-the-math-on-a-snack.html.  The suggested retail price of a bar is $1.99, but the actual price can vary from as little as $1.00 per bar to $3.50 per bar.  *Id.*  Last year, consumption of the bars rose more than 100 percent.  *Id.*

21.    KIND has premised its entire brand identity and advertising campaign on health.  KIND advertises its "brAND philosophy" on its website, which is: "There's healthy.  There's tasty.  Then there's healthy and tasty.  At KIND, we believe you deserve both."   KIND also implores consumers on both its product labels and website to: "do the kind thing for your body, your taste buds, & the world."

22.     In 2008, KIND's former affiliate, PeaceWorks Holdings LLC, financed a Study with the Yale-Griffin Prevention Research Center to determine whether eating two KIND bars a day helped consumers lose weight.

23.    The Study consisted of two groups of overweight adults: a control group and an experimental group.  All of the 94 participants in the Study were overweight adults.  Members of

control group were advised to follow their usual daily diets for eight weeks, while members of the experimental group were instructed to add two KIND Fruit & Nut bars to their usual diets for the duration of eight weeks.  Members of the experimental group were not given any particular guidance on how to make room for the additional calories.  After eight weeks, the Study found that there had been no significant change in weight, body mass index (BMI), and waist size, despite the fact that the experimental group had purportedly added 340 calories to their daily diets.

24.    Based upon the results of the Study, KIND represents on its products' labels, boxes, and website that eating two KIND bars a day helps prevent weight gain.

25.    However, the Study was fraught with problems, and its results do not represent that eating two KIND bars a day helps prevent weight gain.

26.    First, the Study only includes a decidedly small sample size of 94 people, of whom only 89 completed the Study.

27.    Second, there was no proof in the Study that the experimental group actually added an additional 340 calories to its diet per day.  The total daily calorie consumption of each participant was not measured or monitored.  Rather, the experimental group participants were only required to prove that they ate two KIND bars per day by submitting the wrappers.

28.     Third, the participants in the study only consumed KIND Fruit & Nut bars, despite there being two other types of KIND bars currently on the market: KIND PLUS and KIND Nuts & Spices.  However, KIND still misrepresents that according to the Study, eating two KIND bars a day helps prevent weight gain without reference to what type of KIND bars.

29.    There are an abundance of variables possible for why the Study's participants did not gain weight at the end of the eight week period.  Perhaps these already overweight individuals decided to exercise more during the study.  Exercise was not factored into the study.  Perhaps the

participants became more aware of what they were consuming as a result of the Study, and chose to either eat less or eat healthier. Perhaps the experimental group participants substituted two KIND bars a day for 340 calories worth of other food. None of these basic and obvious variables were considered in this self-serving Study.

30.    The Study principally dealt with satiety after snacking on purportedly nutrient dense foods. The idea is that if people fill up on foods rich in healthy ingredients like nuts and fruit, they will not eat other less healthy alternatives. The study concludes that "the role of habitual snacking on nutrient dense and satiating foods on both weight over time, and diet quality, *warrants further study*." (emphasis added).

31.    The conditions and results of this Study are not sufficient for KIND to represent to consumers that eating two KIND bars a day helps prevent weight gain. Doing so is deliberately materially misleading, deceptive, and false.

32.    Indeed, contrary to KIND's material misrepresentation, the Study does not conclude or "indicate" that "eating two KIND bars a day helps prevent weight gain." Rather, the Study concludes that the consumption of "[t]wo daily fruit and nut bars, totaling 1421.9 kJ (340 kcal), <u>did not cause weight gain</u>." The fact that a product does not <u>cause</u> weight gain is distinguishable from whether the product <u>prevents</u> weight gain, as KIND has advertised. Accordingly, KIND's representation that the Study "indicates that eating two KIND bars a day helps prevent weight gain" is deliberately materially misleading, deceptive, and false.

33.    The Study indicates that eating two KIND bars a day in fact had no impact upon the measured health diagnostics of the participants. The Study measured the weight, waist circumference, blood pressure, and blood lipid panel of each participant and concluded that those measures "did not change from baseline" after the consumption of two KIND bars a day over an

eight week period.    Indeed, the Study repeatedly indicates throughout the "Results" and "Discussion" sections that the ingestion of two KIND bars per day had no effect on those health measures, relative to the control group:

• "Anthropometric measures (i.e. body mass index, weight and waist circumference) <u>did not improve from baseline</u> after consumption of fruit and nut snack bar compared to controls (P = 0.40, 0.44 and 0.69, respectively) (Table 3)."  (emphasis added).

• "Lipid panel levels (i.e. TC, HDL, protein, TC/HDL ratio, LDL and triglycerides) <u>also did not improve from baseline</u> compared to controls (P = 0.72, 0.11, 0.37, 0.81 and 0.89, respectively (Table 3)."

• "The blood pressure (both systolic and diastolic) of the study participants <u>did not change from baseline</u> after the consumption of fruit and nut snack bar compared to controls (P = 0.83 and 0.79, respectively) (Table 3)." (emphasis added).

• "The addition of two daily fruit and nut snack bars to habitual baseline diet <u>had no effect on body weight, waist circumference, lipid panel and blood pressure</u> in this sample of overweight adults with elevated waist circumference." (emphasis added).

• "The findings pertaining to changes in anthropometric measures and blood pressure are consistent with the results of previous trials . . . which demonstrated that increased fruit and nut consumption leads to <u>little or no change in these measures</u>."  (emphasis added).

• "The findings of <u>no observed changes in anthropometric measures</u> are in line with that of numerous epidemiological studies." (emphasis added).

• "The present study also revealed that <u>fruit and nut snack bar consumption has no effect on altering systolic or diastolic blood pressure</u> relative to the control group." (emphasis added).

- "Finally, the present study showed that the introduction of fruit and nut snack bar to an *ad libitum* diet <u>did not result in a significant change in serum lipid panel measures</u>." (emphasis added).

Accordingly, the Study concludes that eating two KIND bars a day has no effect on body weight, waist circumference, lipid panel, and blood pressure, and KIND's misrepresentation about the Study finding that KIND bars help prevent weight gain is deliberately materially misleading, deceptive, and false.

34.     Moreover, the Study involved only "overweight adults," but KIND wholly fails to limit its statement about the Study to overweight adults.  Accordingly, KIND's representation about the Study is deliberately materially misleading, deceptive, and false.

35.     A small but significant disparity exists in KIND's representation of the Study on its website versus its representation on KIND bar labels and boxes.  The website states: "Need another reason to choose KIND? A recent study conducted by the Yale-Griffin Prevention Research Center found that two KIND bars a day *can curb appetite and even* help prevent weight gain."  (emphasis added).  *See*, http://www.kindsnacks.com/store#All-Bars.  In contrast, the KIND bar labels merely state: "A study  by the Yale-Griffin Prevention Research Center indicates that eating two KIND bars a day helps prevent weight gain."

36.     The representation regarding the Study on the KIND website is different than the representation on the KIND bar labels and boxes because it gives *some* context to why eating two KIND bars *might* help prevent weight gain: because it can curb appetite.   Conversely, the labels and boxes represent to consumers merely that "eating two KIND bars a day helps prevent weight gain."

37.     Given KIND's representations on its labels, boxes, and website, that its bars are

"healthy snacks" that allow consumers to "Fill up without filling out!" and that the Study "indicates that eating two bars a day helps prevent weight gain," reasonable consumers could be deceived into believing that eating two KIND bars a day will help to prevent them from gaining weight.

38.     Reasonable consumers, such as Plaintiffs and Class Members, rely on these misrepresentations and deceptive references to the Study and to weight gain prevention when deciding to purchase and consume KIND bars.

39.     Reasonable consumers of KIND bars, such as Plaintiffs and Class Members, particularly rely on these misrepresentations and deceptive references to the Study because they are more health-conscious and cognizant of nutritional representations than average consumers. This is true because KIND's entire brand, image, and advertising platform is premised on health, and on catering to health-conscious consumers.  KIND bars are principally sold in grocery stores and other establishments that promote similar healthy values such as Whole Foods and General Nutrition Centers (GNC).

40.     Further, reference to the Study on the label appears above the fold of the wrapper, in a more prominent location than the nutrition information, which appears underneath the fold of the wrapper.  KIND knows or should know that reasonable consumers wishing to examine the nutrition information would first see KIND's misrepresentation that the Study "indicates that eating two KIND bars a day helps prevent weight gain."

41.     Plaintiffs and Members of the Class and Subclasses were lured into becoming consumers of KIND bars through Defendant's branding and advertising message, marketing its bars as a healthy snack, including KIND's nutritional labeling and reference to the Study. Plaintiffs have regularly purchased and consumed KIND bars because of Defendant's marketing, including the reference to the Study on KIND's labels, boxes, and website, that eating two KIND

bars a day helps prevent weight gain. This representation is persistently and pervasively marketed by KIND and it is materially misleading, deceptive, and false.

42.    As a result of the foregoing, Defendant's advertising and misrepresentations regarding KIND bars is deceptive and materially misleading. Because of Defendant's deceptive and materially misleading advertising tactics, Plaintiffs and other members of the proposed Class and Subclasses were and have been induced to purchase and continue to purchase KIND bars. However, Plaintiffs and other members of the proposed Class and Subclasses would not have made these purchasing decisions had they been aware of the truth about Defendant's KIND bars.

43.    Defendant was in a superior position to know and did know that its claims and advertisements were materially misleading, deceptive, and false and it failed to inform consumers that despite the purported conclusion of the Study, eating two KIND bars per day does not help prevent weight gain.

44.    Instead, Defendant allows/allowed its deceptive, false, and misleading marketing to permeate the consumer advertising consciousness and perpetuate Defendant's false and misleading claims and promises.

45.    The Defendant's false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiffs and members of the Class and Subclasses acting reasonably in their reliance on Defendant's acts and practices, and to their detriment, including, but not limited to, paying a premium price for KIND bars, a "healthy snack," marketed as helping prevent weight gain, as opposed to alternative and less expensive snack bars or other snacks. Alternative, less expensive snacks which Plaintiffs and the members of the Class and Subclasses could have purchased instead of KIND bars include, but are not limited to: granola bars, trail mix, packages of nuts, and packages of dried fruit. KIND markets its bars as being

healthy snacks that help prevent weight gain, and as a result obtains a premium price for those bars. In fact, however, the bars are not healthy snacks and do not help prevent weight gain and thus do not provide any superior benefits over ingesting similar snacks, and certainly do not justify their premium prices.

46.    KIND's advertisement of its bars as healthy snacks that help prevent weight gain have influence over the consumer, including Plaintiff and members of the Class and Subclasses, such that a consumer would make the decision to buy the bars in the first place, or to pay a premium for them over less expensive snacks due to their purported superior nature.

47.    Even though there is a lack of genuine scientific support for a claim that KIND bars are healthy snacks that help prevent weight gain, KIND persistently and pervasively markets its product as a superior, healthy snack worthy of a premium price. Defendant knows or should know that its marketing and advertising will lead the reasonable consumer to believe that KIND bars are superior to other, similar snacks such as a granola bars, trail mix, packages of nuts, and packages of dried fruit that contain less sugar and to then pay more than he or she should have for a substantially similar snack.

48.    Because of such deceptive and materially misleading practices and conduct, Defendant: 1) has been able to sell more of its product than it otherwise would have and achieve substantial market share and sales in the United States; and 2) is able to charge a substantial premium for its products over readily available and much lower priced snacks that provide the same or substantially similar results. Thus, Defendant reaps profits on products where reasonable consumers have been induced to buy their bars because of a perceived, but false, benefit of weight gain prevention, and also to pay an unwarranted, substantial premium.

49.    Defendant's false and deceptive acts and practices caused Plaintiffs, and the

members of the Class and Subclasses, to suffer actual injury because the price of KIND bars are inflated as a result Defendant's material misrepresentations that its bars are healthy snacks that help prevent weight gain, causing Plaintiffs, the Class Members, and the members of the Subclasses to pay a premium price for the bars over alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

50.     Plaintiffs, the Class Members, and the members of the Subclasses also suffered ascertainable losses as a result of Defendant's unfair, deceptive, and/or unconscionable acts and practices because the value of the KIND bars as promised was substantially less than the value of the actual product received.  Indeed, because KIND bars are not healthy snacks that help prevent weight gain, the value of the KIND bars as received is equal to the value of alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

51.     All conditions precedent necessary for the filing of this Amended Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of a Nationwide Class, New York Subclass, New Jersey Subclass, and California Subclass of other similarly situated persons pursuant to Fed.R.Civ.P.23(a), 23(b)(2), and/or 23(b)(3).  Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed.  The proposed Classes are defined as follows:

**Nationwide Class**: All persons who purchased Defendant's KIND

bars within the applicable statutory limitations period, including the period following the filing date of this action.

**New York Subclass**: All residents of the State of New York who purchased Defendant's KIND bars within the applicable statutory limitations period, including the period following the filing date of this action.

**New Jersey Subclass**: All residents of the State of New Jersey who purchased Defendant's KIND bars within the applicable statutory limitations period, including the period following the filing date of this action.

**California Subclass:** All residents of the State of California who purchased Defendant's KIND bars within the applicable statutory limitations period, including the period following the filing date of this action.

53.    Excluded from the Classes are: (1) Defendant, Defendant's subsidiaries, affiliates, officers, directors, assigns and successors, and any entity which Defendant has a controlling interest; (2) the Judge to whom this case is assigned and any member of the judge's immediate family; and (3) anyone who purchased the KIND bars solely for the purpose of resale.  Plaintiff reserves the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

54.    This action has been brought and may properly be maintained as a class action pursuant to Fed.R.Civ.P. 23 and case law thereunder.

55.    **Numerosity:** The members of the Classes are so numerous that joinder of all members is impracticable.  Plaintiffs reasonably believe that the Classes are comprised of hundreds of thousands, if not millions, of consumers throughout the United States and New York.

56.    **Commonality:** Common questions of law and fact exist as to all members of the

Classes. These common questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

- whether Defendant's claim that according to the Study, eating two KIND bars a day can help prevent weight loss is deceptive or misleading;

- whether Defendant engaged in false or misleading advertising;

- whether Defendant's conduct as alleged herein violates the New York Deceptive Acts and Practices Act, New Jersey Consumer Fraud Act, and the California Unfair Competition Law and False Advertising Law;

- whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and

- whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

These and other questions of law or fact which are common to the members of the Classes and predominate over any questions affecting only individual members of the Class.

57. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Classes, as all Class members are similarly affected by Defendant's wrongful conduct. Plaintiffs, like other members of the Classes, purchased KIND bars after exposure to the same material misrepresentations and/or omissions appearing on the product labels, boxes, and website, and received a product that was not as represented. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Classes.

58. **Adequacy:** Plaintiffs' claims are made in a representative capacity on behalf of the other members of the Class. Plaintiffs have no interests antagonistic to the interests of the other members of the proposed Class and are subject to no unique defenses.

59. Plaintiffs are similarly situated in interest to all members of the proposed Class and are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiffs are adequate

representatives of the proposed Class and will fairly and adequately protect the interests of the Class.

60.    This suit may be maintained as a class action under Fed.R.Civ.P. 23(b)(2) because Defendant has acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  Specifically, injunctive relief is necessary and appropriate to require Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing that eating two KIND bars a day helps prevent weight gain; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to their prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning KIND bars' effect on consumers' weight including without limitation, the placement of corrective advertising and providing written notice to the public.

61.    In addition, this suit may be maintained as a class action under Fed.R.Civ.P. 23 (b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes could afford such litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents no management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

<u>COUNT I</u>
**Violation of N.Y. Gen. Bus. Law. § 349 - Deceptive Acts and Practices**
**(Asserted on Behalf of the New York Subclass)**

62.    Plaintiff Alexandra Boyle re-alleges and incorporates by reference the allegations contained in paragraphs 1–61 above as if fully set forth herein.

63.    N.Y. Gen. Bus. Law § 349 states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful."

64.    Through its deceptive acts and practices (including omissions), Defendant has harmed the public at large, including Plaintiff and members of the New York Subclass, and such deceptive acts and practices were conducted through trade or commerce.

65.    Defendant's deceptive acts and practices, as alleged herein, are and were consumer oriented in that the Defendant is in the business of distributing, marketing, and selling its KIND bars to consumers, including Plaintiff and members of the New York Subclass.

66.    The Defendant's deceptive acts and practices, including the failure to reveal facts material in light of their representations, as set forth in this Amended Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Subclass regarding Defendant's products.

67.    As alleged herein, Defendant engaged and continues to engage in deceptive or materially misleading acts or practices by, including but not limited to, representing on its KIND bar labels, boxes, and website that KIND bars are a "healthy snack" when in fact those bars contain high amounts of sugar.

68.    As alleged herein, Defendant engaged and continues to engage in deceptive or

materially misleading acts or practices by, including but not limited to, representing on its KIND bar labels, boxes, and website that the Study indicates that eating two KIND bars a day helps prevent weight gain, when in fact, it does not. Moreover, Defendant engaged in deceptive or materially misleading acts or practices by, including but not limited to, representing on the packaging of its boxes of KIND bars that the bars allow consumers to "Fill up without filling out!"

69.     The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Amended Complaint, including but not limited to, the knowing misrepresentation or failure to disclose the true nature of the characteristics, ingredients, standards, and quality of KIND bars also constitute violations of the provisions of the New York Deceptive Acts and Practices Act.

70.     The Defendant's false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiff and members of the Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment, including, but not limited to, paying a premium price for KIND bars, a purportedly "healthy snack," as opposed to alternative and less expensive bars or other snacks.

71.     Defendant's false and deceptive acts and practices caused Plaintiff and members of the New York Subclass to suffer actual injury because the price of KIND bars are inflated as a result Defendant's misrepresentations that its bars are a "healthy snack" that helps prevent weight gain, causing Plaintiff and members of the New York Subclass to pay a premium price for the bars over alternative and less expensive snack bars or other snacks that yield the same or substantially similar results.

72.     Plaintiff and New York Subclass members have suffered actual damages as a result of Defendant's violations of GBL § 349 and are entitled to relief including, but not limited to,

actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law.

**COUNT II**
**Violation of N.Y. Gen. Bus. Law. § 350- False Advertising**
**(Asserted on Behalf of the New York Subclass)**

73.    Alexandra Boyle re-alleges and incorporates by reference the allegations contained in paragraphs 1–72 above as if fully set forth herein.

74.    N.Y. Gen. Bus. Law § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

75.    Through its false and deceptive acts and practices (including omissions), Defendant has harmed the public at large, including Plaintiff and members of the New York Subclass, and such false and deceptive acts and practices were conducted through trade or commerce.

76.    Defendant's false and deceptive acts and practices, as alleged herein, are and were consumer oriented in that the Defendant is in the business of distributing, marketing, and selling its KIND bars to consumers, including Plaintiff and members of the New York Subclass.

77.    The Defendant's false and deceptive acts and practices (or omissions) as set forth in this Amended Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiffs and members of the New York Subclass regarding Defendant's products.

78.    As alleged herein, Defendant engaged and continues to engage in false, deceptive, or materially misleading acts or practices by, including but not limited to, representing on its KIND bar labels, boxes, and website that KIND bars are a "healthy snack."

79.    As alleged herein, Defendant engaged in false advertising by, but not to limited to, representing on its KIND bar labels, boxes, and website that the Study indicates that eating two

KIND bars a day helps prevent weight gain, when in fact, it does not.  Moreover, Defendant engaged in deceptive or materially misleading acts or practices by, including but not limited to, representing on the packaging of its boxes of KIND bars that the bars allow consumers to "Fill up without filling out!"  Further, Defendant engaged in deceptive or materially misleading acts or practices by failing to reveal material facts about the Study in light of Defendant's representations that eating two KIND bars a day helps prevent weight gain, when in fact, it does not.

80.    The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Amended Complaint, including but not limited to, the knowing misrepresentation or failure to disclose the true nature of the characteristics, ingredients, standards and quality of KIND bars and the true results of the Study also constitute violations of GBL § 350.

81.    Defendant's false and deceptive acts and practices caused Plaintiff and the members of the New York Subclass to suffer actual injury because the price of KIND bars are inflated as a result Defendant's misrepresentations that its bars are a healthy snack that helps prevent weight gain, causing Plaintiff and the New York Subclass to pay a premium price for the bars over alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

82.    Plaintiff and Subclass members relied on these false representations made by KIND in purchasing KIND bars at a premium price over alternative and less expensive snack bars or other snacks.

83.    Plaintiff was health-conscious, concerned with maintaining a healthy diet, and preventing weight gain.  Accordingly, Plaintiff purchased and ate the purportedly healthy KIND bars over other alternative snacks or snack bars.

84.    The Defendant's false and deceptive acts and practices set forth herein are and were

likely and reasonably foreseeable to mislead Plaintiff and members of the Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

85.    Plaintiff and New York Subclass members have suffered actual damages as a result of Defendant's violation of GBL § 350 and are entitled to relief including, but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law.

**COUNT III**
**Violation of the New Jersey Consumer Fraud Act**
**(Asserted on Behalf of the Plaintiff and the New Jersey Subclass)**

86.    Plaintiff Taylor MacKenzie re-alleges and incorporates by reference the allegations contained in paragraphs 1–85 above as if fully set forth herein.

87.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et. seq.* is designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  By making false, deceptive, and misleading claims that KIND bars are a superior, "healthy snack" and that the Study indicates that eating two KIND bars a day helps prevent weight gain, Defendant has engaged, and continues to engage, in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of N.J.S.A. § 56:8-1 *et. seq.*

88.    The acts, practices, misrepresentations and omissions by Defendant, as described above, and Defendant's dissemination of deceptive and misleading labeling, advertising, marketing, and sales materials concerning its products, constitutes unfair competition and unfair or deceptive acts or practices within the meaning of N.J.S.A. § 56:8-1 *et. seq.*

89.    Defendant violated N.J.S.A. § 56:8-1 *et. seq.* by making certain false, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars as described herein.

90.    The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Amended Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the New Jersey Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

91.    Plaintiff and the other New Jersey Subclass members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiff and the other New Jersey Subclass members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website, and (b) Plaintiffs were induced to pay a premium price for KIND bars, a purportedly "healthy snack," as opposed to alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

92.    Defendant's false, misleading, and deceptive acts and practices caused Plaintiff and the New Jersey Subclass members to suffer actual injury because the price of KIND bars are inflated as a result Defendant's misrepresentations that its bars are a healthy snack that help prevent weight gain, causing Plaintiff and the New Jersey Subclass to pay a premium price for the bars over alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

93.    Plaintiff and New Jersey Subclass members suffered an ascertainable loss as a result of Defendant's unfair, deceptive, and/or unconscionable acts and practices because the value of the KIND bars as promised was substantially less than the value of the actual product received. Indeed, because KIND bars are not healthy snacks that help prevent weight gain, the value of the KIND bars as received is equal to the value of alternative and less expensive snack bars or other

snacks that yield the same or substantially similar results as the purportedly superior KIND bars. Specifically, Plaintiff ate approximately one KIND bar per day for approximately two years, at an average cost of approximately $1.70 per bar.  Alternative and less expensive snack bars or other snacks, including but not limited to, granola bars, trail mix, packages of nuts, and packages of dried fruit, on average cost $1.00 or less per serving.  By this calculation, Plaintiff's ascertainable loss was at least $511.00.

94.     As a result of Defendant's violations of N.J.S.A. § 56:8-1 *et. seq.*, Plaintiff and the other New Jersey Subclass members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiff and New Jersey Subclass members may be entitled.

**COUNT IV**
**Violation of California Unfair Competition Law**
**(Asserted on Behalf of the Plaintiff and the California Subclass)**

95.     Plaintiff Sarah Abbey re-alleges and incorporates by reference the allegations contained in paragraphs 1–94 above as if fully set forth herein.

96.     The California Unfair Competition Law (UCL), Cal. Bus. & Prof Code § 17200, *et seq.* is designed to protect consumers against deceptive, unfair, unlawful, and fraudulent trade and business practices. By making false, misleading, and deceptive claims that the Study indicates that eating two KIND bars a day helps prevent weight gain, Defendant has engaged, and continues to engage, in unfair competition or unlawful, unfair, misleading, unconscionable, fraudulent, or deceptive acts in violation of the UCL.

97.     The acts, practices, misrepresentations, and omissions by Defendant, as described above, and Defendant's dissemination of deceptive and misleading labeling, advertising,

marketing, and sales materials concerning its products, constitutes unfair competition and unfair or deceptive acts or practices within the meaning of the UCL.

98.     Defendant violated the UCL by making certain false, fraudulent, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars.

99.     The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Amended Complaint are likely and reasonably foreseeable to deceive, confuse, and mislead Plaintiff and members of the California Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

100.     Plaintiff and the other California Subclass members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiff and the other California Subclass members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website; and (b) Plaintiffs and other California Subclass members were induced to pay a premium price for KIND bars, a purportedly "healthy snack," as opposed to alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

101.     Defendant's false, misleading, and deceptive acts and practices caused Plaintiff and the California Subclass members to suffer actual injury because the price of KIND bars are inflated as a result Defendant's misrepresentations that its bars are a healthy snack that help prevent weight gain, causing Plaintiff and the California Subclass to pay a premium price for the bars over alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

102.    Plaintiff and members of the California Subclass relied on Defendant's unconscionable, unfair, fraudulent, and deceptive acts and practices set forth in this Amended Complaint, including its misrepresentation that KIND bars are a healthy snack and its references to the Study and KIND bars' effect on helping to prevent weight gain.

103.    The Defendant's material misrepresentations that its bars are healthy snacks that help prevent weight gain has been made to the entire California subclass.

104.    Plaintiff was health-conscious, concerned with maintaining a healthy diet, and preventing weight gain.  Accordingly, Plaintiff purchased and ate the purportedly healthy KIND bars over other alternative, less expensive snacks or snack bars.

105.    Accordingly, Defendant's false and deceptive acts and practices caused Plaintiff and the California Subclass members to suffer actual injury because the price of KIND bars are inflated as a result Defendant's misrepresentations that its bars are healthy snacks that help prevent weight gain, causing Plaintiff and the California Subclass to pay a premium price for the bars over alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

106.    As a result of Defendant's violations of the UCL, Plaintiff and the other California Subclass members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiff and California Subclass members may be entitled.

<u>COUNT V</u>
**Violation of California False Advertising Law**
**(Asserted on Behalf of the Plaintiff and the California Subclass)**

107.    Plaintiff Sarah Abbey re-alleges and incorporates by reference the allegations contained in paragraphs 1–106 above as if fully set forth herein.

108.    The False Advertising Law (FAL), Cal. Bus. & Prof Code § 17500, *et seq.* is designed to protect consumers against deceptive, unfair, unlawful, and false advertising.  By making false and deceptive claims that its bars are a healthy snack and that the Study indicates that eating two KIND bars a day helps prevent weight gain, Defendant has engaged, and continues to engage false advertising in violation of the FAL.

109.    Defendant violated the FAL by making certain false, fraudulent, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars, including, but not limited to representations on its KIND bar labels, boxes, and website that according to the Study, eating two KIND bars a day helps prevent weight gain. Defendant knew or should have known that these representations were false, deceptive, and misleading.

110.    As alleged herein, Defendant engaged and continues to engage in false, fraudulent, misleading, and/or deceptive advertising, including but not limited to, representing on its KIND bar labels, boxes, and website that KIND bars are a "healthy snack" when in fact those bars contain high amounts of sugar.

111.    As alleged herein, Defendant engaged in false advertising by, but not to limited to representing on its KIND bar labels, boxes, and website that the Study indicates that eating two KIND bars a day helps prevent weight gain, when in fact, it does not.  Moreover, Defendant engaged in false, fraudulent, misleading, and/or deceptive advertising by, including but not limited to, representing on the packaging of its boxes of KIND bars that the bars allow consumers to "Fill

up without filling out!"

112.    The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Amended Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the California Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

113.    Plaintiff and the other California Subclass members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiff and the other California Subclass members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website, and (b) Plaintiffs and other California Subclass members were induced to pay a premium price for KIND bars, a "healthy snack," as opposed to alternative and less expensive snack bars or other snacks.

114.    Plaintiff and members of the California Subclass relied on Defendant's unconscionable, unfair, fraudulent, and deceptive acts and practices set forth in this Amended Complaint, including its misrepresentation that KIND bars are a healthy snack and its references to the Study and KIND bars' effect on helping to prevent weight gain.

115.    Plaintiff was health-conscious, concerned with maintaining a healthy diet, and preventing weight gain.  Accordingly, Plaintiff purchased and ate the purportedly healthy KIND bars over other alternative snacks or snack bars.

116.    Accordingly, Defendant's false and deceptive acts and practices caused Plaintiff and the California Subclass members to suffer actual injury because the price of KIND bars are inflated as a result Defendant's misrepresentations that its bars are healthy snacks that help prevent weight gain, causing Plaintiff and the California Subclass to pay a premium price for the bars over

alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

117.    As a result of Defendant's violations of the FAL, Plaintiff and the other California Subclass members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiff and California Subclass members may be entitled.

**COUNT VI**
**Violation of States' Consumer Protection Laws**
**(Asserted on Behalf of the National Class)**

118.    Plaintiffs Alexandra Boyle, Taylor MacKenzie, and Sarah Abbey re-allege and incorporate by reference the allegations contained in paragraphs 1–117 above as if fully set forth herein.

119.    The vast majority of states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. By making false and deceptive claims that KIND bars are healthy snacks and that the Study indicates that eating two KIND bars a day may prevent weight gain, Defendant has engaged, and continues to engage, in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed, but not limited to the below:

a.    Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.*;

b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

c.    Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq.*;

f.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

g.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42- 110a, *et seq.;*

h.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

i.      District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.;*

j.      Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et seq.*;

k.      Georgia Fair Business Practices Act, §10-1-390 *et seq.;*

l.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.;*

m.      Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

n.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

o.      Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

p.      Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

q.      Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.;*

r.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

s.      Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

t.      Michigan Consumer Protection Act, §§ 445.901, *et seq.;*

u.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

v.      Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

w.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

    x.      Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

    y.      Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.;*

    z.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

    aa.    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:l, *etseq.;*

    bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

    cc.    North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

    dd.    Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109:4-3-02, 109:4-3-03, and 109:4-3-10;

    ee.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

    ff.    Oregon Unfair Trade Practices Act, Ore. Rev. Stat § 646.608(e) &(g);

    gg.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

    hh.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

    ii.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

    jj.    Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.;*

    kk.    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

    ll.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.;*

    mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

    nn.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

("Consumer Protection Acts").

The acts, practices, misrepresentations and omissions by Defendant, as described above, and Defendant's dissemination of deceptive and misleading labeling, advertising, marketing, and sales materials concerning its products, constitutes unfair competition and unfair or deceptive acts or practices within the meaning of each of the above enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions.

120.    Defendant violated each of these statutes by making certain material false, misleading, and/or deceptive promises regarding the health qualities and effect on weight gain of its KIND bars.

121.    The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Amended Complaint are likely and reasonably foreseeable to mislead the members of the Class acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

122.    The Class Members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices: (a) because the Class Members were induced to purchase a product they would not have otherwise purchased had they not relied on the misrepresentation regarding the Study on its labels, boxes, and website, and (b) because the Class Members were induced to pay a premium price for KIND bars, a purportedly "healthy snack," as opposed to alternative and less expensive snack bars or other snacks that yield the same or substantially similar results as the purportedly superior KIND bars.

123.    As a result of Defendant's violations of the foregoing state consumer protection statutes, the Class Members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which the Class Members may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Classes defined herein, prays for judgment as follows:

a.  Certification of the Classes under Federal Rule of Civil Procedure 23 and appointment of Plaintiffs Alexandra Boyle, Taylor MacKenzie, and Sarah Abbey as class representatives of the National Class, Alexandra Boyle as representative of the New York Subclass, Taylor MacKenzie as representative of the New Jersey Subclass, and Sarah Abbey as representative of the California Subclass, and their counsel as Class counsel;

b.  A temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing that their bars are "healthy snacks"; (ii) discontinue advertising, marketing, packaging and otherwise representing that the Study "indicates that eating two KIND bars a day helps prevent weight gain"; (iii) undertake an immediate public information campaign to inform members of the proposed Classes as to the prior practices; and (iv) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of KIND bars, including without limitation, the placement of corrective advertising and providing written notice to the public;

c.  An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiffs and all members of the Classes and to restore to the Plaintiffs and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false advertising;

d.   Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

e.   Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

f.   Statutory pre-judgment and post-judgment interest on any amounts;

g.   Reasonable attorneys' fees as may be allowable under applicable law;

h.   Costs of this suit; and

i.   Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  May 27, 2014

Respectfully Submitted,

MORELLI ALTERS RATNER (NEW YORK)
950 Third Avenue
11th Floor
New York, New York  10022
Telephone:     (212) 751-9800
Facsimile:     (212) 751-0046

By:   /s/_____
Benedict P. Morelli
bmorelli@morellialters.com
S.D.N.Y. Bar ID: BP6597
David S. Ratner
dratner@morellialters.com
S.D.N.Y Bar ID: DR7758
Adam Deutsch
adeutsch@morellialters.com
S.D.N.Y. Bar ID: AD8836
David Sirotkin
dsirotkin@morellialters.com
S.D.N.Y. Bar ID: DS4863

MORELLI ALTERS RATNER (MIAMI)
Miami Design District
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone:    (305) 571-8550
Facsimile:    (305) 571-8558

Jeremy W. Alters
jalters@morellialters.com
Florida Bar No.: 111790
Matthew T. Moore
mmoore@morellialters.com
Florida Bar No.: 70034